## NAILCRETE CORPORATION v. PAUL MENDE, Inc.

(Circuit Court of Appeals, Second Circuit. April 5, 1926.)

No. 261.

1. Patents ⚖➾328.

Patent No. 1,140,559, May 25, 1915, claims 1, 2, 3, 4, 5, 7, 8, and 10, for an artificial stone of a texture such that nails might be driven therein, *held* invalid.

2. Patents ⚖➾17.

A difference in proportions of constituents of mixture or composition does not alone entitle originator to monopoly of a patent.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by the Nailcrete Corporation against Paul Mende, Inc. Decree for defendant, and plaintiff appeals. Affirmed.

Sheffield & Betts, of New York City (Drury W. Cooper and Edward W. Vaill, both of New York City, of counsel), for appellant.

Johnson, Heymann, Galston & Holstein, of New York City (Clarence G. Galston, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellant sued below for infringement of letters patent No. 1,140,559, issued May 25, 1915, on an application filed October 30, 1912, for artificial stone. Claims 1, 2, 3, 4, 5, 7, 8, and 10 are involved. The claims, in substance, provide for an artificial stone comprising cement and asbestos tailings, a filler having a specified gravity substantially less than the average concrete mixture, and a texture such that nails, screws, and tacks may be driven therein as described; also an artificial stone consisting by volume of one part hydraulic cement, two parts sand, and two parts asbestos tailings, substantially as described. This cementitious composition was devised to produce a cement or concrete composition which would be relatively strong and hard, and yet so constituted that it will receive and firmly hold tacks, nails, and screws which may be driven in it, as such are held by wood. Another advantage is the production of a composition of inexpensive materials which may be readily united with ordinary hydraulic and cement composition and form a strong bond; also a material which would not be liable to disintegrate when subject to moisture or heat, or expand or contract from the same causes. The court below passed judgment against the appellant, holding that there was no infringement established.

[1] The general use of mixing asbestos, sand, and cement and forming a composition were known prior to the date of the patentee's conception. But the patentee distinguishes between rock asbestos and asbestos sand, and the appellant's expert says that rock asbestos is the tailings obtained from the manufacture of commercial asbestos. He describes rock asbestos as being composed of a mixture of particles of rock with stubby ends of asbestos fiber adhering thereto. Asbestos sand is said to be a commercial product, which is obtained by by-passing and grinding the rock asbestos, and it contains relatively no rock properties. The patentee, in his amendment of April 1, 1913, when applying for his patent, distinguished commercial fiber asbestos from rock asbestos by pointing out that one is a com-

mercial product and the other merely the run of the mine, and it was because of this difference that an alleged superiority of rock asbestos was produced, and this, he says, entitled him to a patent.

It was argued, on the question of infringement, that the appellee, in its use of asbestos sand, used the same material as that specified by the patentee, because asbestos sand is a product of rock asbestos. At the same time, the patentee disclaims asbestos sand. Appellant argued that it was a commercial product, as it is, and that what makes meritorious the invention was the use of rock asbestos. It says the material constituting the appellant's proof of infringement was asbestos tailings, as referred to in the claims in the patent in suit. But it is quite clear to us, from the record and examination of the exhibits, that there is a vast difference between rock asbestos—i. e., referred to as tailings—and asbestos sand, which is a commercial article. There is little, if any difference in the percentage of asbestos fiber; there is a difference in the price on the market. Asbestos sand is fiber and rock asbestos and may be said to be bearded rock; and the appellant insists that what distinguishes its product from all other products is the employment of rock asbestos in making the composition.

The argument here rests upon the distinction between the appellant's composition and that of all other compositions in the use of rock asbestos, instead of any other form of asbestos. But asbestos and cement composition is disclosed in many instances of the prior art. Patent No. 155,176, to Bartlett, March 13, 1874, refers to a "compound of asbestos hydraulic cement and plaster of paris." The patent to Zeigler, No. 923,925, of June 8, 1919, in the statement of the inventor, says: "I mix the following ingredients in substantially the proportions specified: Pulverized sand, stone, or slag, 47 per cent.; Portland cement, 36 per cent.; asbestos, 10 per cent.; gum arabic, 3 per cent.; pulverized alum, 2 per cent.; and beeswax, 2 per cent." The patent to Fust, No. 900,512, of October 6, 1908, refers to the composition of cement asbestos fiber paint and gum arabic, and asserts that "the asbestos fiber renders the material pliable, so as to enable the same to fit close on a roof. * * *" The patent to Hyatt of December 2, 1873, No. 145,181, refers to "a plastic composition, B, composed of asbestos, combined with gypsum and Portland cement." In the patent to Hatschek, No. 12,594, of January 15, 1907, the invention is carried into effect by mixing "intimately fibrous material—such as asbestos for example—in the presence of a great bulk of water with hydraulic cement."

The patents to Norton, No. 847,293, March 12, 1907, and also No. 929,002, of July 27, 1909, referred to the new processes and products in asbestiform fiber. In the former, the patentee says that he has observed that "the serpentine, which is closely associated in nature with fibrous asbestos, though apparently a rock which reduces mechanically to a hard granular gravel, will, when still further comminuted by grinding, become reduced to a pulp which, instead of being a fine fust or assemblage of hard, minute granules, is itself also essentially fibrous, and closely analogous in its character and 'feel' to a mass of pulped asbestos fibers. * * * It may be mixed with longer asbestos fiber, if desired, but for most purposes may be used without such mixture."

In the latter patent he says: "One takes, for instance, a mass of fibers of which asbestos is a type; these may either be asbestos fibers as ordinarily understood, or may consist of the fibrous pulp produced by grinding the serpentine rock from which asbestos is mined. With these fibers, preferably in a dry state, there is mixed a suitable quantity of dry hydraulic cement; suitable proportions are ten to twelve parts by weight of hydraulic cement (Portland cement) and twenty parts by weight of asbestos fiber."

There are also publications that refer to similar uses of asbestos. That qualities and properties of rock asbestos were known cannot be doubted when these many experiments and patents of the prior art are examined. There the function, when used with sand and cement, was thoroughly understood. The British patent, No. 3,708 (1888), to Lee, relates to the manufacture of materials for the use and construction among other things of fireproof ceilings, columns, walls, partitions, panels and blocks and doors and the inventor refers to asbestos fiber carefully mixed with a composition while in liquid or semiliquid condition, and that a sufficient quantity should be used to act as a fibrous binding agent, assisting to unite the whole mass together, and says that among the advantages is the fact that the slab and objects made of this mixture may be nailed to a backing, if necessary, or may have objects nailed to them, as the asbestos fiber prevents the concrete or cement from cracking and flying. Indeed, he suggests that it may be nailed just as if it were a backing of wood; the nails being easily driven in and held by the material. The same qualities and advantages are referred to in the United States patents.

[2] Without referring to each claim specifically, it is quite clear that what the patentee had in mind was disclosed by the compositions provided for in the prior art patents and the advantages of such compositions for nailing or holding purposes was clearly disclosed. The only disclosure that the patent in suit contains is the composition of cement and rock asbestos. If we read it as a disclosure of composition of cement and asbestos fiber, the specification would be indefinite, because the amount of fiber that might be screened out from rock asbestos would vary very considerably. There is no guide to the amount of fiber alone that may be used. Unless asbestos tailings mean asbestos rock, as is claimed by the appellant, there is no doubt that Hatschek and Norton, as well as Lee, anticipated. If asbestos is the equivalent of asbestos tailings, they are found used in the Hatschek artificial stone, and he says that his stone is "a texture such that nails, screws, and tacks may be driven therein." This is also true of Hatschek's shingles, for which he says they "can be readily sawed, filed, and cut, and nails can be driven through them." If there be a difference in the proportions of constituents, that alone does not entitle the originator to the monopoly of the patent. Brady Brass Co. v. Ajax Metal Co., 160 F. 84, 87 C. C. A. 240; David Belais v. Goldsmith Bros. (D. C.) 6 F.(2d) 930, affirmed (C. C. A. 2d Circuit, March 1, 1926) 10 F. (2d) 673.

It is also clear to us that the appellee does not use the ingredients of the patent as in the mixtures of the appellant, as it is likewise clear that he does not use the portions suggested by the patent. But we prefer to rest our decision upon the lack of novelty in what the patent disclosed.

Decree affirmed.